UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
```
  PHOBIA ENTERTAINMENT, LLC            : Case No. 18 cv    (    )
                                       :
                   v.                  : COMPLAINT
                                       :
  108 MEDIA CORP., ABHI RASTOGI,       :
  GUNPOWDER & SKY DISTRIBUTION, LLC., :
  CINETIC RIGHTS MANAGEMENT, LLC,      :
  FILM BUFF PRODUCTIONS,               :
  INCORPORATED, AMAZON DIGITAL         :
  SERVICES, LLC, GOOGLE, INC.          :
  MICROSOFT CORPORATION, JOHN DOES     :
  1-10 and JOHN DOE ENTITIES 1-10      :                         :
                       Defendants.     :
```
---------------------------------------------------------------x

Plaintiff PHOBIA ENTERTAINMENT LLC, (hereinafter "Plaintiff"), as and for its Complaint against Defendants 108 MEDIA CORP. ABHI RASTOGI, GUNPOWDER & SKY DISTRIBUTION, LLC, CINETIC RIGHTS MANAGEMENT, LLC, FILM BUFF PRODUCTIONS, INCORPORATED, AMAZON DIGITAL SERVICES, LLC, GOOGLE, INC., MICROSOFT CORPORATION, JOHN DOES 1-10 and JOHN DOE ENTITIES 1-10 alleges as follows, upon information and belief:

**PRELIMINARY STATEMENT**

1. This is an action for: (1) Copyright Infringement, (2) Secondary Copyright Infringement and (3) Breach of Contract. This action arises from Defendants' willful, deliberate, and systematic misappropriation of Plaintiff's copyrighted work in distributing, reproducing marketing and licensing Plaintiff's work without permission and in the deliberate and knowing misuse of that misappropriated intellectual property in multiple outlets.

2. Plaintiff's work is the motion picture known as "Agoraphobia" ("the movie").

3. Plaintiff registered the copyright in the movie with the United States Copyright Office, obtaining Copyright Registration Number PAu-3-753-945 with an effective date of December 3, 2014. A copy of proof of the registration is attached as Exhibit "A" to the complaint.

## THE PARTIES

4. Plaintiff is a Florida Limited Liability Corporation with its principal office located at 1505 SW 131st Ave, Miami Florida, 33184.

5. Defendant 108 MEDIA CORP. (Defendant 108) is a Canadian Corporation with its principal place of business located at 225 Commissioners Street, Toronto Ontario M4MOA1

6. Defendant ABHI RASTOGI (Defendant Rastogi) is a Canadian citizen and the Chief Executive Officer of Defendant 108.

7. Defendant GUNPOWDER & SKY DISTRIBUTION, LLC. (Defendant GSD) is a New York Limited Liability Corporation with its principal office located at 25 West 31st Street, Third Floor, New York New York, 10001.

8. Defendant CINETIC RIGHTS MANAGEMENT, LLC. (Defendant Cinetic) is a New York Limited Liability Corporation with its principal office located at 25 West 31st Street, Third Floor, New York New York, 10001.

9. Defendant FILM BUFF PRODUCTIONS, INCORPORATED. (Defendant Film Buff) is a California Corporation with its principal office located at 12730 Sunset Boulevard, Los Angeles, California 90049

10. Defendant GSD is the successor in interest, parent company, or operator of Defendant Film Buff and Defendant Cinetic.

11. Defendant AMAZON DIGITAL SERVICES, LLC (Defendant Amazon) is a Delaware Corporation with its principal office located at 410 Terry Avenue North, Seattle Washington 98109.

12. Defendant GOOGLE, INC. (Defendant Google) is a Delaware Corporation with its principal office located in 1600 Amphitheatre Parkway, Mountain View, California 94043

13. Defendant MICROSOFT CORPORATION (Defendant Microsoft) is a Washington Corporation with its principal office located at One Microsoft Way, Redmond Washington, 98052.

14. Defendants JOHN DOES 1-10 are fictitious names meant to represent those individuals who have also infringed Plaintiff's work and have personal responsibility and liability for the conduct and activities set forth below in the Complaint but whose names are presently unknown.

15. Defendants JOHN DOE ENTITIES 1-10 are fictitious names meant to represent those entities other than those identified in the Complaint who have also infringed Plaintiff's work and/or have responsibility and liability for the conduct and activities set forth below in the Complaint but whose names are presently unknown.

16. Non-party LORETTA SIMON is known professionally as "Lou Simon" (referred to hereafter as "Lou Simon").

17. Non-party WHITE LOTUS PRODUCTIONS LLC is a Florida LLC that is the manager of Plaintiff.

18. Non-Party Lou Simon is the chief executive officer and principal shareholder of non-party WHITE LOTUS PRODUCTIONS LLC and Plaintiff.

## FACT ALLEGATIONS APPLICABLE
## TO ALL CAUSES OF ACTION

### THE MOVIE

19.  "AGORAPHOBIA" is the title of the work in question and was completed in 2014.

20.  The movie was written and directed by Lou Simon through White Lotus Productions LLC which was credited as the author on the copyright registration for the movie.

21.  The movie stars horror film legend Tony Todd; Cassandra Scerbo; and Maria Olsen.

22.  All of the intellectual property rights and copyright in the movie was transferred from White Lotus Productions LLC to Plaintiff by written agreement.

23.  White Lotus Productions LLC is the manager of Plaintiff with respect to the movie.

### THE INITIAL DISTRIBUTION AGREEMENT

24.  In and around November 2014, Lou Simon met Defendant Rastogi at the American Film Market, a film industry event held every November in Santa Monica California.

25.  In December 2014, Plaintiff and defendant 108 entered into a contract for the distribution of the movie by Defendant 108 in North America, Japan, Benelux and Scandinavia ("the Agreement"). A copy of the Agreement is attached to the complaint as Exhibit "B."

### THE CANCELLATION AGREEMENT

26.  The Agreement required that the movie be distributed within twelve months of execution and also required that Defendant 108 use best efforts to market it prior to its release; distribute it; and maximize profits.

27.  By June of 2015, Plaintiff had provided to Defendant 108 all of the deliverables required of Plaintiff by the Agreement.

28.  Plaintiff fully complied with the terms and obligations of the Agreement.

29. Defendant 108 advised Plaintiff that it expected to release the movie in November of 2015 and had even expected to be able to secure a theatrical release for the movie.

30. Plaintiff began to have a series of issues with the way Defendant 108 was proceeding with its obligations under the Agreement.

31. Plaintiff documented and summarized those issues in an email to Defendant Rastogi dated October 7, 2015.  In that email, Plaintiff, through Lou Simon, asked Defendant 108 to cancel the Agreement.

32. Neither Defendant Rastogi nor Defendant 108 responded to the October 7, 2015 email.

33. Plaintiff sent a second email on October 23, 2015, this time to Nick Burton of Defendant 108, again calling for the cancellation of the Agreement.

34. Defendant Rastogi and Lou Simon exchanged a series of emails to try and connect to discuss cancellation during the period of October 23, 2015 through October 27, 2015.

35. Rastogi and Simon agreed that Defendant 108 would not be the film's distributor.

36. On October 27, 2015, Defendant 108 and Plaintiff entered into a Cancellation Agreement that rescinded the Agreement *ab initio* and whereby all the rights and intellectual property rights in the movie were returned to Plaintiff. A copy of the Cancellation Agreement is attached to the complaint as Exhibit "C."

37. The Cancellation Agreement was effective immediately.

## THE MOVIE APPEARS ONLINE

38. Despite all the foregoing, defendant 108 failed to take appropriate steps to assure that the movie would not be released and distributed.

39. Despite all the foregoing, defendant 108 caused the movie to be reproduced, distributed and available for download and/or streaming on various platforms, including through Defendant

Amazon Digital Services, Inc., Defendant Google through its "Google Play" service and Defendant Microsoft through its Microsoft Store.

40. Sample screenshots of the movie's improper availability are attached to the Complaint as Exhibit "D."

41. Defendant Cinetic was listed as the studio responsible for the movie on some of these improper outlets.

42. Plaintiff sent an email on November 3, 2015 advising defendant 108 of the foregoing improper availability of the movie.

43. Plaintiff demanded in writing that Defendants cease and desist in this infringement.

44. Defendant 108 initially complied as to all distributors but not before the movie was available for download and/or streaming for approximately 72 hours.

45. By that time, not only was the movie available for download and/or streaming, the movie had been pirated and uploaded on to numerous pirate and torrent sites on the Internet.

46. In February of 2016, Plaintiff became aware that the movie was again available on Amazon.com and the Microsoft Store.

47. This time, defendant Film Buff was listed as the studio.

48. Plaintiff contacted defendant Film Buff to cease and desist in making the movie available.

49. Defendant Film Buff advised Plaintiff that it had obtained the movie from defendant 108 through a license agreement.

50. Defendant Film Buff eventually complied.

51. In October 2016, Plaintiff became aware that the movie was again available on Amazon.com.

52. This time the studio was again listed as Defendant Cinetic.

53. Plaintiff contacted defendant Amazon who complied with the requests to cease and desist.

## JURISDICTION AND VENUE

54. This is a civil action seeking damages and a permanent injunction for copyright infringement under the Copyright Act, 17 USC §§ 101, 106, and 501 *et seq.* and under New York common law for breach of contract.

55. This court has original subject matter jurisdiction over the claims pursuant to 28 USC §§ 1331, 1332, and 1338.

56. This Court has personal jurisdiction over Defendants pursuant to N.Y. Civ. Prac. L. & R. ("CPLR") §§ 301 and 302(a), as Defendants have (i) regularly transacted business within the state (CPLR § 302(a)(l)); (ii) conducted a tortious act within the state by delivering and offering to deliver the movie to residents of New York (CPLR § 302(a)(2)).

57. Upon information, belief, Defendants continuously solicit business from New York residents over the internet via websites, e-mail solicitations, phone, mailings, by accepting payment from New York residents, by appearing at, and selling goods and services at face-to-face meetings held in New York, and by delivering and offering to deliver materials that infringe copyrights to residents of New York.

58. Venue is proper in this Court pursuant to 28 USC § 1391(b)(2) and (c) because a substantial part of the actions and wrongful conduct underlying these claims occurred in this District.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT 108 MEDIA AND ABHI RASTOGI FOR COPYRIGHT INFRINGEMENT OF PLAINTIFF'S WORK

59. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-57 of the Complaint as if fully set forth herein

**60.** Defendant has profited from its infringement of Plaintiff's copyrighted work, done irreparable harm to the value of Plaintiff's copyrighted work; profited at Plaintiff's direct expense; and will continue to do so unless enjoined. Plaintiff seeks statutory damages; disgorgement of profits; attorney's fees; and costs.

**61.** Plaintiff seeks permanent injunctions halting all infringing activities, and (in light of the repeated reproduction and re-distribution even after having received multiple cease and desist letters), ordering Court-supervised compliance. Plaintiff also seeks Defendant's profits, damages and exemplary damages, pre- and post-judgment interest, and where appropriate, punitive damages, costs, and attorney's fees.

**62.** As detailed above, Defendant deliberately and willfully infringed Plaintiff's Work by reproducing and distributing it without authorization; by making it available for download and/or streaming without authorization; by licensing it without authorization; by selling it without authorization; and by allowing it to be pirated.

**63.** Defendants negligently and/or recklessly infringed Plaintiff's Work by reproducing it and distributing it without authorization; by making it available for download and/or streaming without authorization; by licensing it without authorization; by selling it without authorization; by taking insufficient steps to prevent its release and distribution after the entry of the cancellation agreement and by allowing it to be pirated.

**64.** Title 17, section 501 (a) states in pertinent part:

Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a) . . . is an infringer of the copyright or right of the author, as the case may be.

**65.** As detailed above, Defendant violated the exclusive right of Plaintiff to (1) reproduce the copyrighted work in copies (17 USC §106(1)); (2) to distribute copies of the copyrighted

work to the public (17 USC § 106(3)); and (3) to display the copyrighted work publicly (17 USC § 106 (5).

66. Even after being told of the improper release and availability of the movie Defendants failed to take sufficient steps to end the display and distribution of the movie.

67. As a result of the foregoing actions of these defendants, Plaintiff's work was reproduced and disseminated without Plaintiff's permission and was thereafter copied, pirated and re-distributed without any compensation to or permission from plaintiff.

68. Plaintiff has been damaged as a result of the actions of these defendants in an amount and manner to be determined by the trier of fact and which meets or exceed the jurisdictional requirements of this court, including all forms of damages available pursuant to Chapter 5 of Title 17 of the United States Code, along with attorney's fees and costs and such other and further relief as the court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR COPYRIGHT INFRINGEMENT OF PLAINTIFF'S WORK

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-68 of the Complaint as if fully set forth herein

70. Multiple re-distributors, vendors and contract parties of Defendant 108 Media including Defendant GSD, Defendant Cinetic, Defendant Film Buff, Defendant Amazon, Defendant Google, and Defendant Microsoft then re-offered Plaintiff's work for download and/or streaming and/or re-offered Plaintiff's work to others to then re-offer to third parties without any permission from Plaintiff and without any compensation to Plaintiff.

71. As detailed above, Defendants have infringed contributorily by intentionally inducing and knowingly encouraging direct infringement by their sub-dealers. Alternatively, Defendants have infringed vicariously by profiting from the direct infringement of other Defendants.

72. Alternatively, Defendants had first-hand knowledge of the copyrighted nature of the Works, yet remained willfully blind to the acts of other Defendants, their own otherwise closely-supervised employees and their own otherwise policed sub-dealers, vendors or re-licensees.

73. Defendants GSD, Film Buff, and Cinetic, without any permission from Plaintiff, entered into agreements with other Defendants and other third parties to allow them to reproduce, distribute and offer Plaintiff's work for download, sale and /or streaming.

74. Defendants Amazon, Google and Microsoft reproduced, distributed and offered Plaintiff's work for download, sale and/or streaming to consumers, subscribers and other third parties.

75. As detailed above, Defendant violated the exclusive right of Plaintiff to (1) reproduce the copyrighted work in copies (17 USC §106(1)); (2) to distribute copies of the copyrighted work to the public (17 USC § 106(3)); and (3) to display the copyrighted work publicly (17 USC § 106 (5).

76. Defendants did so despite being sophisticated distributors of copyrighted content.

77. Defendants negligently and/or recklessly infringed Plaintiff's Work by distributing it without authorization; by making it available for download and/or streaming; by licensing it without authorization; by selling it without authorization; and by allowing it to be pirated.

78. The repeated release of the copyrighted work by defendants amounts to a willful infringement of plaintiff's rights exposing the defendants to up to $150,000.00 in statutory damages and attorneys' fees for each infringement.

79. Plaintiff has been damaged as a result of the actions of these defendants in an amount and manner to be determined by the trier of fact and which meets or exceed the jurisdictional requirements of this court, including all forms of damages available pursuant to Chapter 5 of Title 17 of the United States Code, along with attorney's fees and costs and such other and further relief as the court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST
DEFENDANTS 108 MEDIA CORP. and ABHI RASTOGI
FOR STATE LAW BREACH OF CONTRACT
FOR BREACH OF THE CANCELLATION AGREEMENT**

80.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1-76 of the Complaint as if fully set forth herein.

81. Pursuant to the Cancellation Agreement, Defendants 108 and Rastogi immediately lost all rights to release and/or distribute the movie.

82. The release and distribution of the movie as outlined above is a breach of the Defendant 108 and Rastogi's obligations under the Cancellation Agreement.

83.  Plaintiff has been damaged by virtue of Defendants' breach of their obligations under the Cancellation Agreement.

84. Due to the breach of the Cancellation Agreement, Plaintiff lost the opportunity to have the movie properly distributed and released and therefore lost the revenue and other benefits and advantages that would have come with the proper release of the film.

85. Due to the breach of the Cancellation Agreement, Plaintiff has been damaged in its ability to create content; raise funds; produce and release future films; and continue to develop its business.

86. Plaintiff has been damaged as a result of the actions of these defendants in an amount and manner to be determined by the trier of fact and which meets or exceed the jurisdictional

requirements of this court, including attorney's fees and costs as per the Cancellation Agreement and such other and further relief as the court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For a declaration that Defendants have willfully infringed Plaintiff's copyrights and both directly and secondarily.

2. For a permanent injunction requiring that Defendants cease all direct infringement, and all inducement of the infringement of Plaintiff's exclusive rights.

3. For damages pursuant to 17 USC § 504, and 17 USC § 1203, in such amounts as may be found or established at trial, arising from Defendants' violations of Plaintiff's rights under each of the applicable statutes. Additionally, for exemplary/enhanced damages for Defendants' willful and repeated violations of Plaintiff's rights under the applicable statutes.

4. For compensatory and punitive damages in such amounts as may be found or established at trial.

5. For Plaintiff's costs, including reasonable attorney's fees.

6. For pre-judgment and post-judgment interest according to law.

7. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: Mineola, New York

March 7, 2018

Respectfully submitted,

/s/ Oscar Michelen /s/

CUOMO LLC
BY: OSCAR MICHELEN (OM 5199)
Attorneys for Plaintiff
200 Old Country Road
Suite 2 South
Mineola NY 11501
516-741-3222
omichelen@cuomollc.com

PARRON LAW
BY: IVAN PARRON
Attorneys for Plaintiff
1500 Broadway
5th Floor
NY NY  10036
212-419-0773
ip@parronlaw.com